# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CHAD OVERLY, | ) | |
| | ) | Case No. 07-C-1265 |
| Plaintiff, | ) | |
| | ) | Judge Der-Yeghiayan |
| v. | ) | |
| | ) | Magistrate Judge Nolan |
| CITY OF CHICAGO and JEROME FINNEGAN (sic), | ) ) | |
| | ) | |
| Defendants. | ) | Jury Trial Demanded |

## DEFENDANT JEROME FINNIGAN'S ANSWERS TO COMPLAINT, AFFIRMATIVE DEFENSES, AND JURY DEMAND

NOW COMES Defendant, Jerome Finnigan, ("Defendant Finnigan"), who has been improperly named as "Jerome Finnegan," by and through his attorneys, and states as follows for his Answers to Complaint, Affirmative Defenses, and Jury Demand:

### Introduction

1. This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**ANSWER:** Defendant Finnigan admits that Plaintiff brings this action under 42 U.S.C. § 1983. Defendant Finnigan denies that Plaintiff has been deprived under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2. This Court has jurisdiction of the action under 28 U.S.C. § 1331 and 1367.

**ANSWER:** Defendant Finnigan admits the allegations contained in this paragraph.

3. Venue is proper as Defendant City of Chicago is a municipal corporation located here and the events giving rise to the claims asserted herein all occurred within this district.

**ANSWER:** Defendant Finnigan admits the allegations contained in this paragraph.

## Background

4. Plaintiff, Chad Overly, lives with his wife and their two children in Bloomington, Illinois.

**ANSWER:** Defendant Finnigan is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

5. With the exception of the events described below, Mr. Overly has been employed as a truck driver with Brandt Truck Line for approximately the last five years. Mr. Overly's job takes him to and from Chicago on a regular basis.

**ANSWER:** Defendant Finnigan is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

6. On or about the November 2, 2005, Mr. Overly was driving his truck on Chicago's Adlai Stevenson Expressway when he was cut-off by a car driven by Defendant Finnegan (sic). After cutting him off, Defendant Finnegan (sic) forced Mr. Overly to pull his truck off to the side of the road.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

7. Once both vehicles were pulled over, Defendant Finnegan (sic) approached Mr. Overly, who had stepped down from his truck, and began to attack him. When Mr. Overly attempted to defend himself, Defendant Finnegan (sic) displayed his duty weapon to Mr. Overly and informed him that he was a police officer.

**ANSWER:** Defendant Finnigan admits that he exited his car and approached Plaintiff, who had stepped down from his truck. In addition, Defendant Finnigan admits that he informed Plaintiff that he was a police officer. Defendant Finnigan denies the remaining allegations contained in this paragraph.

8. Mr. Overly immediately stepped away and used his cell phone to call 911. At this time Defendant Finnegan (sic) attacked Mr. Overly, pulling him to the ground and forcing him to hang up the phone. Mr. Overly placed a second phone call to 911 before Defendant Finnegan (sic) once again forced him to hang up.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

9. Defendant Finnegan (sic) then held Mr. Overly down while he contacted the Chicago Police Department. During this call, Defendant Finnegan (sic) identified himself as a

Chicago Police Officer and requested assistance. Throughout this, Defendant Finnegan (sic) restrained Mr. Overly, who was not permitted to get up.

**ANSWER:** Defendant Finnigan denies that he contacted the Chicago Police Department. Defendant Finnigan admits the remaining allegations contained in this paragraph.

10. Thereafter, Chicago Police Officers and an Illinois State Police Trooper arrived at the scene. Based upon Defendant Finnigen's (sic) false statements, Mr. Overly was placed under arrest and taken to an Illinois State Police station.

**ANSWER:** Defendant Finnigan admits that an Illinois State Police Trooper arrived at the scene and that Plaintiff was placed under arrest and taken to a police station. Defendant Finnigan denies the remaining allegations contained in this paragraph.

11. During the incident, Defendant Finnegan (sic) took possession of Mr. Overly's cell phone, which was never returned.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

12. Mr. Overly was eventually charged with battery and reckless conduct. These charges were filed by Defendant Finnegan (sic) in his capacity as a police officer.

**ANSWER:** Defendant Finnigan admits that Plaintiff was charged with battery and reckless conduct. Defendant Finnigan denies the remaining allegations contained in this paragraph.

13. In the following months, Mr. Overly was forced to travel to Chicago to attend multiple court hearings on the charges against him. In January of 2006, after Defendant Finnegan (sic) had repeatedly failed to come to court, the charges were dismissed in a manner indicative of Mr. Overly's innocence.

**ANSWER:** Defendant Finnigan admits that in January 2006, the charges against Plaintiff were dismissed. Defendant Finnigan denies the remaining allegations contained in this paragraph.

14. As a result of the false charges, Mr. Overly was fired from his job and was able to return to work only after the charges against him were dismissed.

**ANSWER:** Defendant Finnigan denies that the charges were false. Defendant Finnigan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph.

15. At all times during his interactions with Plaintiff, Defendant Finnegan (sic) was acting under color of law and within the scope of his employment as a Chicago Police Officer.

**ANSWER:** Defendant Finnigan admits the allegations contained in this paragraph.

### City of Chicago's Failure to Train, Discipline and Control

16. Municipal policy-makers have long been aware of the City of Chicago's policy and practice of failing to properly train, monitor and discipline its police officers:

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

a. Following two high profile, unjustified police shootings in 1999, the City Council held public hearings. On September 28, 1999, then-Superintendent of the Chicago Police Department Terry Hillard gave a speech highlighting the problems with the City of Chicago's policies and practices relating to the use of force. Superintendent Hillard specifically noted the need for (1) better in-service training on the use of force; (2) early detection of potential problem officers; and (3) officer accountability for the use of force.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

b. In a review commissioned by the Superintendent, Chicago's John Marshall Law School found that although the City of Chicago's policies on the use of force were in compliance with the law, more training of police officers was necessary.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

c. Moreover, in January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

       d.    A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed that resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality. The JCGC findings were presented to Mayor Daley, Superintendent Hillard and the Chicago Police Board.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

       e.    Two years later, <u>Garcia v. City of Chicago</u>, 01 C 8954, 2003 WL 22175618 (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture within the Chicago Police Department where officers felt they could commit misconduct like that described above with impunity.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

       f.    Indeed, by its own accounting, in 2004, the latest date for which the City of Chicago has provided public statistics, the City sustained only four percent of the complaints brought against police officers for use of excessive force. An even smaller percentage of officers were actually disciplined for such conduct.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

    17.    Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address that failure.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

    18.    In 1996, the City of Chicago intentionally abandoned a program designed to track police officers repeatedly acting in an abusive manner because of opposition by the Police Union. The City promptly deleted all data contained in the program, including the list of problem officers.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

19. In 2000 and 2001, the City continued to refuse to implement a system allowing for the detection of repeat police officer-offenders, despite the fact that the Commission on Accreditation for Law Enforcement Agencies adopted a standard mandating such a detection system for large agencies such as Chicago.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

20. In 2003, although the City of Chicago and the Police Union negotiated a new contract allowing the Chicago Police Department to use unsustained Office of Professional Standards ("OPS") cases "to identify patterns of suspected misconduct about which the public and regulatory agencies are so intensely and legitimately concerned," no such pattern analysis has ever been implemented. Indeed, pursuant to that contract, OPS records are only kept for seven years, precluding any meaningful long-term analysis of an officer's misconduct.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

21. Finally, Chicago's training of its officers has not changed since 1999, despite repeated promises by the City and City policymakers for a more comprehensive training program.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at Defendant City of Chicago.

### Count I -- 42 U.S.C. § 1983
### Excessive Force

22. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Finnigan incorporates his responses to the previous paragraphs in this Complaint as if fully set forth herein.

23. As described in the preceding paragraphs, the conduct of Defendant Finnegan (sic) toward Plaintiff constituted excessive force in violation of the United States Constitution.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

24. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

25. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

26. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused of excessive force can be confident that OPS will not investigate those accusations in earnest and will refuse to recommend discipline even where the Officer has engaged in excessive force;

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

    e. The City of Chicago has failed to act to remedy the patterns of abuse describe in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

  27. As a result of the unjustified and excessive use of force by Defendant Finnegan (sic), as well as the City's policy and practice, Plaintiff has suffered pain and injury, as well as emotional distress.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

  28. The misconduct described in this Count was undertaken by Defendant Finnegan (sic) within the scope of his employment and under color of law such that his employer, City of Chicago, is liable for his actions.

**ANSWER:** Defendant Finnigan admits that his actions on November 2, 2005 were undertaken within the scope of his employment and under color of law.  Defendant Finnigan denies that his actions constitute "misconduct."  Defendant Finnigan makes no answer to the remaining allegations in this paragraph because they are directed at Defendant City of Chicago.

### Count II -- 42 U.S.C. § 1983
### False Arrest/Unlawful Detention

  29. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Finnigan incorporates his responses to the previous paragraphs in this Complaint as if fully set forth herein.

  30. As described more fully above, Defendant Finnegan (sic) falsely arrested and unlawfully detained Plaintiff without justification and without probable cause.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

  31. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

32. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described in preceding paragraphs.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

33. As a result of the above-described wrongful infringement of Plaintiff's rights, Plaintiff suffered pain and injury, as well as emotional distress.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

34. The misconduct described in this Count was undertaken by Defendant Finnegan (sic) within the scope of his employment and under color of law such that his employer, City of Chicago, is liable for his actions.

**ANSWER:** Defendant Finnigan admits that his actions on November 2, 2005 were undertaken within the scope of his employment and under color of law. Defendant Finnigan denies that his actions constitute "misconduct." Defendant Finnigan makes no answer to the remaining allegations in this paragraph because they are directed at Defendant City of Chicago.

## COUNT III -- State Law Claim
## Malicious Prosecution

35. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

36. In the manner described more fully above, Plaintiff was improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of his innocence.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

37. Specifically, Defendant Finnegan (sic) accused Plaintiff of criminal activity knowing those accusations to be without probable cause and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

38. Defendant Finnegan's (sic) statements to the prosecutors were made with knowledge that they were false and perjured. In so doing, Defendant Finnegan (sic) fabricated evidence and withheld exculpatory information.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

39. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

40. As a proximate result of this misconduct, Plaintiff suffered injuries, including but not limited to emotional distress.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

### Count IV -- State Law Claim
### Assault and Battery

41. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

42. As described more fully in the preceding paragraphs, the actions of Defendant Finnegan (sic) created a reasonable apprehension of imminent harm and constituted offensive physical contact with Plaintiff.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

43. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness and reckless indifference to the rights of others.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

44. As a proximate result of this misconduct, Plaintiff suffered injuries, including but not limited to emotional distress.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

## COUNT V -- State Law Claim
## False Imprisonment

45. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

46. Plaintiff was seized, arrested, and detained by Defendant Finnegan (sic), despite his knowledge that there was no probable cause for doing so.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

47. As described in the preceding paragraphs, Defendant Finnegan (sic) unlawfully restrained Plaintiff's freedom of movement about by imprisoning him. In this manner, Plaintiff's freedom of movement was unduly and unlawfully restricted.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

48. The actions of Defendant Finnegan (sic) set forth above were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

49. As a proximate result of this misconduct, Plaintiff suffered injuries, including but not limited to emotional distress.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

## COUNT VI -- State Law Claim
### Conversion

50. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

51. As described more fully in the preceding paragraphs, Defendant Finnegan (sic) stole Plaintiff's cell phone, which was never recovered.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

52. Plaintiff has an absolute and unconditional right to this property, which Defendant Finnegan (sic) wrongfully and without authorization assumed control, dominion, or ownership of.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

53. Plaintiff's demands for return of this property went unheeded.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

54. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

55. The misconduct described in this Count was undertaken by Defendant Finnegan (sic) within the scope of his employment such that his employer, City of Chicago, is liable for his actions.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

### Count VII -- State Law Claim
### Respondent Superior

56. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

57. In committing the acts alleged in the preceding paragraphs, Defendant Finnegan (sic) was a member and agent of the Chicago Police Department, acting at all relevant times within the scope of his employment.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

58. Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

### Count VIII -- State Law Claim
### Indemnification

59. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

60. Illinois law provides that public entities must pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

61. Defendant Finnegan (sic) is or was an employee of the Chicago Police Department, who acted within the scope of his employment in committing the misconduct described herein.

**ANSWER:** Defendant Finnigan has moved to dismiss this Count based on the applicable statute of limitations, and therefore makes no answer to this paragraph at this time.

WHEREFORE, Plaintiff, CHAD OVERLY, respectfully requests that this Court enter judgment in his favor and against the CITY OF CHICAGO and JEROME FINNEGAN (sic), awarding compensatory damages and attorney's fees, along with punitive damages against JEROME FINNEGAN (sic), as well as any other relief this Court deems just and appropriate.

**ANSWER:** Defendant Finnigan denies that Plaintiff is entitled to the relief that he seeks.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE: QUALIFIED IMMUNITY

At all times material to the events alleged in the Complaint, Defendant Finnigan was a government official and performed discretionary functions. As to the federal claims against Defendant Finnigan, a reasonable police officer objectively viewing the facts and circumstances that confronted Defendant Finnigan could have believed his action to be lawful, in light of clearly established law and the information that Defendant Finnigan possessed. Defendant Finnigan, therefore, is entitled to qualified immunity as a matter of law.

### SECOND AFFIRMATIVE DEFENSE: STATUTE OF LIMITATIONS

As to all state law counts, and as explained in detail in Defendant Finnigan's Motion to Dismiss, the statute of limitations for claims against municipalities and their employees is one year. 745 ILCS § 10/8-101. Plaintiff alleges that Defendant Finnigan violated Illinois law on

November 2, 2005, and that the dispute between Plaintiff and Defendant Finnigan was fully resolved by January 2006. Plaintiff brought this lawsuit against Defendant Finnigan, a city employee, well over one year later -- on March 6, 2007. Therefore, all state law claims alleged in this Complaint must fail pursuant to Illinois' statute of limitations.

### THIRD AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT

As to all state law counts, under the Local Governmental and Governmental Employees Tort Immunity Act ("Illinois Tort Immunity Act"), Defendant Finnigan is not liable for any injury resulting from Defendant Finnigan's exercise of discretion as a public employee. Therefore, Defendant Finnigan is not liable for any of his alleged conduct which occurred on November 2, 2006, including but not limited to the decision to arrest and charge Plaintiff, because Defendant Finnigan's actions were based upon the information and circumstances known to Defendant Finnigan at the time, and were discretionary actions for which he is immune from liability. 745 ILCS § 10/2-201.

### FOURTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT

Defendant Finnigan was a police officer at the time of the facts alleged in the Complaint. Under the Illinois Tort Immunity Act, Defendant Finnigan is not liable for the state claims alleged against him because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. Defendant Finnigan's conduct was not willful and wanton. 745 ILCS § 102/2-202.

### FIFTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT

Defendant Finnigan was employed as a police officer, and acting within the scope of his employment, at the time of the facts alleged in the Complaint. Under the Illinois Tort Immunity Act, Defendant Finnigan is not liable for the claims alleged against him because a public

employee acting within the scope of his or her employment is not liable for an injury caused by the act or omission of another person. 745 ILCS § 102/2-204.

### *SIXTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT*

Under Illinois Tort immunity law, Defendant Finnigan is not liable for any injury allegedly caused by instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acted maliciously and without probable cause. Defendant Finnigan did not act maliciously or without probable cause. 745 ILCS § 10/2-208.

### *SEVENTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT*

Defendant Finnigan, a public employee at the time of the events alleged in the Complaint, is not liable to pay punitive or exemplary damages in actions brought against him based on an injury allegedly arising out of an act or omission occurring within his scope of employment, while he was serving in a position involving the determination of policy or the exercise of discretion, when the alleged injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even if abused. 745 ILCS § 10/2-213.

### *EIGHTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT*

Defendant Finnigan is not liable for any of Plaintiff's alleged claims because a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the good faith enforcement of a law that is unconstitutional, invalid or inapplicable, except to the extent they would have been liable had the enactment been constitutional, valid and applicable. 745 ILCS § 10/2-203.

### *NINTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT*

Defendant Finnigan is not liable for any of Plaintiff's alleged claims because a public

employee, as such and acting within the scope of his/her employment, is not liable for an injury caused by his failure to enforce any law. 745 ILCS § 10/2-205.

### *TENTH AFFIRMATIVE DEFENSE: CONTRIBUTORY NEGLIGENCE AND COMPARATIVE FAULT*

To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by the negligent, willful, wanton, and/or other wrongful conduct on the part of Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the jury.

At the time of the actions alleged in Plaintiff's Complaint, 735 ILCS § 5/2-1116 was in effect, which reduces a plaintiff's recovery according to his contributory negligence and bars his recovery entirely when a plaintiff is more than fifty percent (50%) of the proximate cause of the injury or damage for which recovery is sought.

### *ELEVENTH AFFIRMATIVE DEFENSE: FAILURE TO MITIGATE*

To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, a verdict or judgment obtained by Plaintiff must be reduced by an application of the principle that Plaintiff has a duty to mitigate, commensurate with a degree of failure to mitigate attributed to Plaintiff by the jury.

### **JURY DEMAND**

Defendant Jerome Finnigan respectfully demands a trial by jury of this cause.

WHEREFORE, Defendant JEROME FINNIGAN respectfully requests that this Court enter judgment in his favor and against Plaintiff CHAD OVERLY as to all counts of Plaintiff's Complaint, and grant any other relief that this Court deems just.

Dated: June 15, 2007                             RESPECTFULLY SUBMITTED,

                                                     s/ Michael A. Ficaro
                                          Attorney for Defendant Jerome Finnigan

Michael A. Ficaro  (ARDC No. 798738)
Kathleen H. Champagne  (ARDC No. 6237321)
Jacob M. Mihm  (ARDC No. 6272719)
UNGARETTI & HARRIS LLP
70 West Madison Street
Suite 3500
Chicago, IL 60602
312-977-4400 (phone)
312-977-4405 (facsimile)

## CERTIFICATE OF SERVICE

I, Michael A. Ficaro, one of the attorneys for Defendant Jerome Finnigan, certify that I caused a true and correct copy of the attached **DEFENDANT JEROME FINNIGAN'S ANSWERS TO COMPLAINT, AFFIRMATIVE DEFENSES, AND JURY DEMAND** to be served pursuant to ECF as to all filing users upon:

| | |
|---|---|
| Jonathan I. Loevy | Penelope Moutoussamy George |
| Arthur R. Loevy | CITY OF CHICAGO, DEPT. OF LAW |
| Gayle M. Horn | 30 North LaSalle Street |
| Jonathan A. Rosenblatt | Suite 900 |
| LOEVY & LOEVY | Chicago, IL 60602 |
| 312 N. May Street | (312) 744-9010 |
| Suite 100 | Email: pgeorge@cityofchicago.org |
| Chicago, IL 60607 | |
| Email: loevylaw@loevy.com | |

on June 15, 2007.

                                               s/ Michael A. Ficaro